UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHARLIE SPEARS                                                                                           PLAINTIFF

VERSUS                                                              CIVIL ACTION NO. 3:14CV763-TSL-RHW

COMMISSIONER CAROLYN W. COLVIN                                                         DEFENDANT
United States Social Security Administration

**PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

This matter is before the undersigned on Plaintiff Charlie Spears' motion for summary judgment requesting that the Commissioner's decision to deny benefits be reversed. Doc. [9]. Also pending before the Court is the Commissioner's motion to affirm the decision. Doc. [12]. In his motion, Spears argues that (1) the Administrative Law Judge (ALJ) did not properly evaluate the issue of presumptive disability with respect to Listing 12.05 at step 3 of the sequential evaluation; (2) the ALJ did not consider all of Spears' limitations in determining his residual functional capacity (RFC); and (3) the Commissioner did not carry her burden at step 5 of the sequential evaluation by identifying work that Spears can perform.

Spears filed an application for disability insurance benefits and supplemental security income for a disability period beginning September 1, 2008. Doc. [8] at 39-40, 90-92, 351-52. Spears was born December 2, 1977. *Id.* He has limited education and was found to be illiterate by the ALJ. *Id.* at 412. Spears previously was employed as a laborer at a chicken farm and deboned chickens. *Id.* at 107, 112-13, 365, 375-76. The ALJ determined that Spears had severe impairments of cold-type symptoms, borderline intellectual functioning, and anxiety disorder. *Id.* at 409. As a consequence, the ALJ concluded that Spears was incapable of performing his past relevant work. *Id.* at 415. Nevertheless, the ALJ concluded that he retained the ability to

perform jobs that exist in significant numbers in the national economy. *Id.* at 415-16.

After exhausting administrative remedies, Spears filed an initial lawsuit in the United States District Court on June 27, 2011. *Spears v. Astrue*, Civil Action No. 3:11cv385-CWR-FKB. The District Court remanded the action to the Commissioner for further proceedings. *See id.* at Doc. [18]. On remand the Appeals Council vacated the ALJ's decision and remanded the decision for further consideration of medical opinion evidence and to consider whether there is a conflict between the vocational testimony and information contained in the *Dictionary of Occupational Titles* (DOT), and if so, to resolve such conflicts. Doc. [8] at 430-31. The ALJ conducted a supplemental hearing, at which time Spears and a vocational expert (VE) testified. *Id.* at 660-707. On February 23, 2013, the ALJ issued an unfavorable decision. *Id.* at 406-16. The Appeals Council denied review. *Id.* at 384-87. Spears then filed the instant cause of action now pending before this Court.

## Law and Analysis

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison*

2

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988).  "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'"  *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).  While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment.  42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5).  The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a), § 404.920(a).  Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step.  *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).  Therefore, if the claimant proves that he is unable to perform past relevant work, the

SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id*.

**(1) Listing 12.05**

Spears argues that at step three of the sequential evaluation, the ALJ did not properly evaluate whether he is presumptively disabled under Listing 12.05 (mental retardation/ intellectual disability). Spears asserts that he meets the criteria for Listing 12.05(C). The ALJ concluded that Spears did not meet Listing 12.05, because the evidence was not sufficient to establish that the IQ scores were valid, and there was insufficient evidence that adaptive deficits manifested before age 22. Doc. [8] at 411-12. The undersigned finds that there is substantial evidence in the record to support each of the ALJ's conclusions.

At step three of the sequential evaluation process, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals the criteria of one of the listed impairments. The ALJ is required to discuss the evidence offered in support of the claim for disability and to explain why the claimant was found not to be disabled at step three. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Listing 12.05(C) specifically requires a "valid verbal, performance or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function." To meet his burden of establishing that presumptive disability under Listing 12.05, the claimant also must also establish (1) significantly sub-average general intellectual function; (2) deficits in adaptive behavior; and (3) manifested deficits in adaptive behavior before age 22. *See Randall v. Astrue*, 570 F.3d 651, 660 (5th Cir. 2009). The term "deficits in adaptive functioning" denotes an

ability to cope with the challenges of everyday life.  Such adaptive activities include cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories and using a post office. *See Morris v. Dretke*, 413 F.3d 484, 487 (5th Cir. 2005).

The ALJ found that Spears' severe impairments included borderline intellectual functioning, but not mental retardation.  Doc. [8] at 411-12.  The ALJ's conclusion is supported by the record.  There is no diagnosis of mental retardation from any treating or examining source.  To the contrary, consultative psychological examiner, Dr. Joseph Dunn, conducted an IQ test of Spears and concluded that he could not render a diagnosis of mental retardation.  *Id.* at 204.  Rather, he diagnosed Spears with borderline intellectual functioning.  *Id.* at 197-99, 204.  State agency psychologist Dr. David Powers also opined that there was nothing to suggest a severe mental problem of any kind and that Spears' limitations would not prevent him from competitive work on a sustained basis.  *Id.* at 501-03.  The ALJ's findings are consistent with the opinions of Dr. Dunn and Dr. Powers on the issue of mental retardation/intellectual disability.

Substantial evidence also supports the ALJ's conclusion that the IQ test was not valid. Dr. Dunn administered an IQ test that resulted in a full scale IQ score of 69.  Hence, the test fell within the IQ range for Listing 12.05(C); however, the ALJ concluded that the test was not valid.  In response to the ALJ's written request regarding the validity of the IQ test, Dr. Dunn responded that in his professional opinion the results were "fair, that is, not good or optimal", and further suggested that the "results are a mild to moderately low estimate of the actual level of functioning."  Doc. [8] at 204.  Dr. Dunn further opined that he "could not conclude or render a diagnosis of mental retardation.  There are too many sub scale scores as well as Verbal IQ and

5

Performance IQ scores that fall in the borderline range." *Id.* Dr. Dunn's opinion provides substantial evidence in support of the ALJ's conclusion that the IQ test scores were not valid.

With respect to adaptive deficits, the ALJ noted that Spears has been married for many years, raised three children, has a consistent work history, and has lived an independent life. *Id.* at 412. The ALJ further noted that Spears is able to perform daily activities such as maintaining his personal hygiene, doing household chores and yard work, driving, making purchases, and using the telephone and directories. *Id.* These conclusions are supported in the record by Dr. Dunn's report, Spears' responses to the daily activities questionnaire, and Spears' testimony. Doc. [8] at 120-26, 192, 368-70. The ALJ's finding that Spears has a consistent work history further supports the conclusion that he does not meet the criteria for Listing 12.05. *See Vaughn v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Fraga v. Bowen*, 810 F.2d 1296, 1305 n.11 (5th Cir. 1987).

**(2) Residual Functional Capacity**

Spears next argues that the ALJ did not consider all of his functional limitations in determining Spears' RFC. He contends that the ALJ should have incorporated additional limitations for Spears' cold-type symptoms and communication difficulties. The undersigned concludes that there is substantial evidence supporting the ALJ's exclusion of further limitations from Spears' RFC concerning cold-type symptoms and communication skills.

With respect to cold-type symptoms, Spears does not identify any medical evidence that would support the inclusion of additional limitations. To the contrary, although Spears received treatment on numerous occasions for cold-type symptoms, he does not identify in the record any medical source assessing functional limitations resulting from this condition. The ALJ noted that

6

Spears has been treated with antibiotics and cough medicine; that the treatment appears to be generally effective; and that care has been conservative and routine in nature. Doc. [8] at 413. The ALJ also noted that Spears received treatment in the emergency room on many occasions for cold-type symptoms, but that Spears has been treated with medication and test results have been normal. *Id.* at 414.

With respect to his communication skills, Dr. Dunn indicated in an RFC assessment that Spears had fair ability to follow work rules, relate to co-workers, deal with the public, and interact with supervisors. *Id.* at 200-01. Dr. Dunn also concluded that Spears had fair ability to understand, remember and carry out simple job instructions as well as detailed, but not complex job instructions. *Id.* State agency psychologist Dr. Powers also opined that Spears could socialize appropriately. *Id.* at 503. The ALJ incorporated Spears' communication abilities into the RFC, finding among other things that he should have limited interaction with coworkers, the public, and receiving supervision. *Id.* at 412. Based on the foregoing, the undersigned concludes that there is substantial evidence in the record to support the ALJ's conclusions insofar as they relate to limitations caused by Spears' cold-like symptoms and communication difficulties.

**Vocational Expert and *Dictionary of Occupational Titles***

Spears argues that there is a conflict between the vocational expert's (VE) testimony and information contained in the DOT. First, Spears asserts that the ALJ failed to incorporate deficits in communication or the effects of "cold-like symptoms" into his RFC or into the hypothetical presented to the VE; therefore, the VE's response to a defective hypothetical does not constitute substantial evidence. Second, Spears argues that the jobs identified by the VE require language level 1 ability, which is inconsistent with Spears illiteracy.

The undersigned concludes that the ALJ properly incorporated any limitations regarding Spears' communication skills in the hypothetical. The ALJ indicated that Spears would need "limited interaction with coworkers, the public, and in receiving supervision" and that he would need to work more with objects than people. Doc. [8] at 684. As explained earlier, the ALJ did not err in declining to incorporate more restrictive limitations in the RFC regarding Spears' communication skills; therefore, the ALJ was not obliged to include them in the hypothetical. Also as explained earlier, the ALJ did not err in declining to incorporate limitations with respect to Spears' cold-like symptoms. The ALJ need only incorporate into the hypothetical question those claimed disabilities supported by the evidence and recognized by the ALJ. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). The medical record fails to demonstrate any additional limitations caused by the impairments; therefore, there was nothing to include in the hypothetical.

Turning to the question of Spears' illiteracy and the DOT, the undersigned concludes that the ALJ did not err. In addressing issues of conflict between the DOT and a VE's testimony, the Fifth Circuit has stated that "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative approach." *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000). It is undisputed that Spears is illiterate. The ALJ included illiteracy as one of the vocational factors for the VE to consider in the hypothetical. Doc. [8] at 684. Spears' RFC specifically stated that he is unable to work at jobs that require reading or writing. *Id.* at 412. Based on a hypothetical including illiteracy, the VE identified the

job titles of dishwasher, laundry worker, and dining room attendant. *Id*. at 685. The VE further testified that her testimony was consistent with the information set forth in the DOT. *Id.* at 686.

Counsel for claimant did not raise at the administrative hearing the question of Spears' illiteracy and how it might affect his ability to perform the jobs identified by the VE. Nevertheless, the ALJ included the factor of illiteracy in the hypothetical presented to the VE. Thus, illiteracy was considered by the VE when she identified jobs suitable for Spears. The jobs identified by the VE all required language level 1 ability, which is the lowest language development contemplated by the DOT. *See Coria v. Commissioner of Social Security*, 1:13cv01643, 2014 WL 7178159, at *5 (E.D. Calif. Dec. 16, 2014). Based solely on a reading of the DOT, basic literacy would be essential for every job in the national economy. *See Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002). However, courts have held that illiteracy is not *per se* disabling. *Id.*; *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). In fact the regulations contemplate that an illiterate person can still perform a significant number of jobs in the economy. *See* 20 C.F.R. Pt. 404 Subpt. P, App. 2 § 201.00(I); *Charles v. Astrue*, 07-51451, 2008 WL 2916282, *5-6 (5th Cir. July 30, 2008). Courts have recognized that the DOT is not a definitive authority on job requirements and that the definitions are generic job descriptions that offer maximum requirements for each position rather than their range. *See Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997).

Spears' illiteracy is a vocational factor, not an impairment, that existed prior to the onset of Spears' alleged disability. 20 C.F.R. § 404.1564(b)(1). As pointed out by the Commissioner, although Spears was no longer capable of performing past relevant work as a chicken de-boner, the DOT classifies this job as requiring language level 1. Despite this language level

9

requirement, Spears performed this previous job up until the alleged onset of disability on September 1, 2008.  The undersigned concludes the ALJ was entitled to rely on the VE's testimony where illiteracy was one of the vocational factors provided in the ALJ's hypothetical, and where claimant's counsel failed to raise at the administrative hearing the alleged discrepancy between the VE's testimony and the DOT.  *See Carey*, 230 F.3d at 146-47; *Donahue*, 279 F.3d at 446-47.

## RECOMMENDATION

The undersigned recommends that Spears' [9] motion for summary judgment should be DENIED and the Commissioner's [12] motion to affirm should be GRANTED.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed **factual findings and legal conclusions** that have been

accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 16th day of October, 2015.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE